GABLE ELECTRIC SERVICE, INC., Appellant,

v.

Warren B. MIMS, Sr., d/b/a Texas Tool Traders, Appellee.

No. 16096.

Court of Civil Appeals of Texas.

Dallas.

Jan. 18, 1963.

Bradford, Pritchard & Ashley, W. A. Pritchard, Dallas, for appellant.

Eades & Eades, Eric Eades, Jr., Dallas, for appellee.

DIXON, Chief Justice.

Appellant Gable Electric Service, Inc., brought this suit against appellee Warren B. Mims, Sr., doing business as Texas Tool Traders for damages for the alleged conversion by appellee of three large transformers.

It is conceded that the City of Dallas is the common source of title to the three transformers. They are valued at about $5,250.

The trial was to the court without a jury. After appellant as plaintiff had finished the presentation of its evidence, appellee, defendant, made a motion for judgment in his favor. The motion was sustained. Judgment was accordingly rendered that appellant take nothing from appellee by its suit.

Appellant's cause of action is based on a written contract. In its brief on appeal appellant asserts that "we think it a logical inference that Appellant was verbally awarded the contract by the City of Dallas on or about April 27, 1959, hence it acquired title to said transformers on said occasion." However appellant's pleadings do not support the above assertion. We quote from the pleadings: * * * "Plaintiff would show the Court that on or about *April 27, 1959,* plaintiff entered into a *written contract* with the City of Dallas which provided, among other things, that plaintiff was to remove four power poles carrying 13,200 volt primaries, with all cross-arms, insulators, conductors and three 5,000 KVA transformers, 13,200 volts to 480 volts. * * * That by virtue of said contract, plaintiff became the lawful owner of said transformers and plaintiff promptly thereafter removed said power poles and arranged for the equipment to remove said transformers, which were extremely heavy. * * *" (Emphasis ours).

The alleged written contract of April 27, 1959 is not an instrument by virtue of which appellant became the lawful owner of the transformers. It is denominated "Request for Bids" and is simply a written notice that

bids would be received by the City of Dallas "To remove 4 power poles carrying 13,200 volt primaries w/all cross-Arms, Insulators, Conductors and 3—5,000 KVA Transformers, 13,200 volts to 480 volts." The notice further states: "Work will be performed after the D. P. & L. Co. has disconnected and removed their feeders and metering equipment from the first pole." This Request for Bids says nothing about title to the transformers. It does not remotely resemble a bill of sale.

The testimony shows that appellant in its bid offered to do the work for $124.00.

Thereafter on May 20, 1959 the City of Dallas issued a written document denominated a "Purchase Order" signed by J. W. Dorff, City Purchasing Agent. This document provided for the removal by Gable Electric Service, Inc., of the material described in the Request for Bids for a consideration of $124. In describing the work to be done it repeats exactly the language used in the written Request for Bids of April 27, 1959. Stamped on the face of the instrument are the words "Confirmation Only Do Not Duplicate." It does not mention title to the transformers or any of the other materials described. It is not a bill of sale.

The City Purchasing Agent, J. W. Dorff, was presented as a witness in behalf of appellant, but his testimony can be of little comfort to appellant in its claim of title. Dorff was asked whether he could look at the written Request for Bids of April 27, 1959, Exhibit Number 7, and tell when the City of Dallas entered into an agreement with appellant. We quote pertinent parts of his testimony:

"Q And this Plaintiff's Exhibit Number 7, is that an instrument that originated in your office?

"A Yes, sir.

"Q Did your office submit this to several contractors for bids?

"A Yes, sir.

"Q Did you subsequently enter into any sort of an agreement with anyone pertaining to this removal work described on this exhibit?

"A Yes, sir.

"Q Who, sir, with whom did you enter into such an agreement?

"A Gable Electric Service.

"Q Now Plaintiff's Exhibit 7, does that describe the work which Gable Electric Service was to perform?

"A Yes, sir.

"Q Does that make any provision for the disposition of three transformers?

"A Well, we say to remove them, that's what we asked them to do. * * *

"Q Now, while—first, let me ask you this: Can you look at Plaintiff's Exhibit 7 and tell us when you entered into an agreement with Gable Electric Company to do the work that is described there?

"A No, sir, you can't tell from this document, we opened bids on 4–27–59, now we would normally place a purchase order to follow through on this.

"Q Now do you have any recollection about announcing to the successful bidder on this contract, did you do it by purchase order or some other manner?

"A I am sure that we did it by purchase order, I am quite sure we did it that way, we have to issue a purchase order to consummate this transaction.

"Q All right, sir, I hand you what has been marked for identification as Plaintiff's Exhibit Number 8, do

you recognize this instrument, sir?

"A Yes, sir, this is the purchase order covering this bid here to Gable Electric, well, this is a purchase order, that's it.

"Q All right, so Plaintiff's Exhibit 8, then, is the purchase order that you issued to Gable Electric Company based on the work they bid on on plaintiff's Exhibit 7, is that right?

"A Yes, sir.

MR. PRITCHARD: We offer into evidence Plaintiff's Exhibits Numbers 7 and 8, Your Honor. * * *

"Q Now, Mr. Dorff, looking at Plaintiff's Exhibit Number 8, does that refresh your memory then as to what time you awarded this contract to Gable Electric Company?

"A Well, I can only tell you by tying this up with other things similar to this. * * *

THE COURT: *Does it show the date?*

MR. PRITCHARD: *It shows the date, and I asked him if it refreshes his memory as to the time they actually awarded the contract to Gable Electric.*

THE COURT: *Well, is the date on the purchase order; wouldn't it speak for itself?*

MR. PRITCHARD: *The instrument speaks for itself, Your Honor, but I would like to let the witness answer the question.*

THE COURT: *Well, if it speaks for itself, he doesn't need to answer it.* (Emphasis ours).

MR. PRITCHARD: That's correct, it's on there. * * *"

The date shown on Exhibit No. 8, the Purchase Order, is May 20, 1959.

The evidence shows that appellee, Mims, claimed title to the transformers by purchase from Johnny Morrow Wrecking Company. The latter company claimed title from the City of Dallas by virtue of a written contract providing for the sale and removal of six buildings at Love Field, the Municipal Airport of the City of Dallas. Three of the buildings were airplane hangars formerly used by Braniff Airways. This contract expressly states: "That the removal covered herein shall be considered as removal of property owned by the Contractors * * *." Appellee claims that the transformers were part of the buildings described in the contract.

## OPINION

■ In its first point on appeal appellant asserts that the trial court erred in excluding the testimony of Dorff when he would have testified that the City intended that appellant Gable Electric Company should have the transformers. Appellee objected on the ground that such testimony amounted to an attempt to vary the terms of a written contract. The court in its discussion of the matter stated that the proffered testimony was hearsay. Appellant insists it was not hearsay. Be that as it may, we think appellee's objection was good and the testimony was properly excluded on the ground that it would vary·the terms of a written instrument. The two written instruments, the Request for Bids of April 27, 1959, pled and introduced in evidence by appellant, and the Purchase Order of May 20, 1959, introduced into evidence by appellant, are not ambiguous. Dorff properly was not allowed to testify that the legal effect of the writings was different from that embodied in the writings themselves. Kingsbery v. Phillips Petroleum Company, Tex.Civ.App., 315 S.W.2d 561, 572; Stitz v. National Producing & Refining Co., Tex.Civ.App., 247 S.W. 657; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.

2d 1004; American Ry. Express Co. v. Patterson Produce Co., Tex.Com.App., 12 S.W. 2d 158; Fowler v. Stoneum, 11 Tex. 478; 14 Tex.Jur.2d, 71. Appellant's first point is overruled.

In its second point on appeal appellant says it was error for the court to render judgment for appellee since appellant had made out a prima facie case of conversion. As we have said, the trial court sustained appellee's motion for judgment at the conclusion of the testimony offered in behalf of appellant.

■■ There is no merit in appellant's second point. The undisputed testimony shows that on April 27, 1959, the City of Dallas still had title to and possession of the transformers. Appellant failed to show any title by virtue of .the written Request for Bids of April 27, 1959, which it pled as the basis for its title. It also failed to show any title based on the Purchase Order of May 20, 1959. Appellee's predecessor in claim of title took possession of the transformers on May 10, 1959. It is inescapable that the transformers on that date were still owned by the City of Dallas, not by appellant. In order for appellant to maintain an action for conversion it was necessary for him to allege and prove that at the time of the conversion he had some right or title to the chattels claimed to have been converted. O'Connor v. Manning, Tex.Civ.App., 255 S.W.2d 277; Employers Casualty Co. v. Rockwall County, 120 Tex. 441, 38 S.W.2d 1098; Oliver Chilled Plow Works v. Askey, Tex.Civ.App., 22 S.W.2d 743. Even if we were to hold that the Purchase Order of May 20, 1959 undertook to pass title to appellant, (we do not so hold) it would not avail appellant, for the alleged conversion took place on May 10, 1959.

Appellant's second point is overruled.

In its third point on appeal appellant contends that it was error for the trial court to enter Findings of Fact and Conclusions of Law.

It has been held as appellant points out, that "in the trial of a case before the court the granting of a motion for judgment urged at the conclusion of the plaintiff's evidence is the legal equivalent of granting a motion for an instructed verdict where the trial is before a jury." See Rhinetubes, Inc., v. Norddeutscher Lloyd, Tex. Civ.App., 335 S.W.2d 269, 274, and cases there cited.

■ We do not disagree with the above statement of the law, but it will not avail appellant here. It was appellant who twice requested that the trial court file findings and conclusions. Finally the court did so at appellant's behest. If it was error it was invited error. Ingram v. Ingram, Tex.Civ.App., 249 S.W.2d 86; Reynolds v. McMan Oil & Gas Co., Tex.Com.App., 11 S.W.2d 778. Moreover if we consider the record before us in a light most favorable to appellant we think the court properly sustained appellee's motion for judgment. The findings and conclusions filed by the court are immaterial and need not be considered by us in arriving at our decision. Appellant's third point on appeal is overruled.

Appellant's remaining points, numbers 4 to 17, inclusive, are presented in the alternative. They attack one by one the court's findings and conclusions. Since we have held that said findings and conclusions are immaterial and need not be considered, we shall not pass on appellant's points 4 to 17, inclusive.

The judgment of the trial court is affirmed.

Affirmed.