NO. 07-03-0537-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 7, 2005
_____

JOSE L. CARDENAS and GLORIA CARDENAS,

Appellants/Cross-Appellees

v.

JACK N. VARNER and JOYCE L. VARNER,

Appellees/Cross-Appellants
_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 22,296; HON. TOM NEELY, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Jack and Joyce Varner sued Jose and Gloria Cardenas to recover upon a promissory note and foreclose upon a vendor's lien securing payment of the note. The Cardenas executed the note as partial payment for ranch land bought from the Varners. When the Cardenas discovered, after closing of the sale, that the acreage was less than that represented by the Varners, they refused to pay the outstanding note balance. This precipitated the aforementioned suit. In response, the Cardenas counterclaimed for breach

of the sales contract and warranties, asserting that they were sold less land than promised. Upon trial before the court, the trial judge reformed the purchase price of the land, subtracted the difference from the outstanding balance due on the note, awarded the Varners the remaining sum due, and permitted them to foreclose upon their lien. The issues before us concern the reformation of the purchase price, the attorney's fees awarded to the Varners, and the interest rates adopted by the trial court. We reverse in part and affirm in part.

*First Issue – Reformation of the Agreement*

The first issue we address encompasses the trial court's reformation of the purchase price. The Cardenas argue that it did not reduce the price enough while the Varners assert that it had no basis to reduce it at all. We overrule the Cardenas' assertion and sustain that of the Varners.

No one disputes that the trial court attempted to reform the agreement struck by the parties. Furthermore, the Cardenas believe that the trial court was authorized to do so because the parties were mistaken about the actual amount of land encompassed in the sale. Thus, equity purportedly entitled the trial court to make the changes to reflect the actual property conveyed. Yet, in suing for redress, the Cardenas only pled causes of action sounding in breached contract and warranties. And, as for relief, they sought only damages in the amount of $204,800, plus court costs, attorney's fees, and interest. Their live pleading said nothing about mistake (either mutual or otherwise) or reforming the terms of the agreement. This is fatal since one must seek reformation in his live pleading to acquire it. *Rattan v. Dicker*, 373 S.W.2d 306, 310 (Tex. Civ. App.–Dallas 1963, no writ); *accord Liu v. Yang,* 69 S.W.3d 225, 229 (Tex. App.–Corpus Christi 2001, no pet.) (stating

2

that to be entitled to reformation of an agreement, a party must plead either mutual mistake, unilateral mistake accompanied by fraud, or other inequitable conduct by the other party).[1]  So, because the Cardenas did not, they were not entitled to reformation of the agreement.  *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) (stating that a party may not be granted relief in absence of pleadings to support that relief).

The Cardenas, however, cite *Scott v. Nunn Elec. Supply Corp.*, 386 S.W.2d 891 (Tex. Civ. App.–Amarillo 1965, no writ) and *Gable Elec. Serv., Inc. v. Mims*, 364 S.W.2d 292 (Tex. Civ. App.–Dallas 1963, no writ) for the proposition that the Varners waived any complaint about the lack of pleading.  Furthermore, they allegedly did so because they invited the error by submitting to the trial court findings of fact and conclusions of law encompassing the trial court's decision to reform the agreement.  While *Scott* and *Gable* indicate that one cannot complain about findings he solicited, we find the cases inapposite for several reasons.  First, the Varners are not complaining about the trial court's findings of fact and conclusions of law.  Second, the error at issue occurred before the findings were submitted by the Varners.  By that time, the trial court had already executed its final judgment effectively reforming the agreement.  So, it can hardly be said that the proffered findings induced the trial court to act in an objectionable manner.

In sum, the conditions necessary to obtain any reformation of the agreement were not satisfied.  Thus, the trial court could not enter judgment granting relief which no one sought and erred by doing so.

*Second Issue – Attorney's Fees*

---

[1]The Cardenas do not assert in their appellate brief that the theory was tried by the consent of the parties.

3

Next we address the dispute regarding attorney's fees. The Cardenas allege that the trial court awarded the Varners too much because the Varners did not segregate the recoverable fees from those that were not. On the other hand, the Varners contend that the trial court failed to award them enough. We agree with the Cardenas.

First, we address the Varners' allegation that the trial court erred in not awarding them attorney's fees to be incurred on appeal and in conducting the post-judgment foreclosure. The record is bereft of evidence indicating what a reasonable fee would be for pursuing those avenues. Without such evidence, the trial court lacked basis to award them. Thus, we reject the Varners' contention.

Next, we address the allegation that the Cardenas were entitled to a reduction in fees awarded to their opponents since the trial court reformed the agreement and lowered the damages due the Varners. In other words, since they were partially victorious in defending against the Varners' suit, the Cardenas believe that they should not have to pay all the fees sought. Assuming that law exists supporting the argument, facts do not. Simply put, the foundation upon which it rests is the validity of the trial court's reformation of the agreement. Because we have held that the trial court erred in that regard, there is no basis to support the argument. Thus, we reject it.

Next, the Cardenas assert that the Varners did not properly segregate the fees. With this, we agree. One claiming attorney's fees has the burden to segregate those recoverable from an opponent from those which are not. *Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 416-17 (Tex. App.–Amarillo 2003, pet. denied); *accord Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988) (generally requiring segregation of fees). Yet, segregation need not occur if the causes of action are

4

dependent upon the same set of facts or circumstances and, thus, are inseparable. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 11-12 (Tex. 1991); *Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d at 416-17.

Here, the Varners sought to recover approximately $45,000 in attorney's fees. The billing summary tendered into evidence illustrated that those fees encompassed action taken to prosecute their claims against the Cardenas and founded upon the promissory note. Yet, so too did it disclose that fees incurred in prosecuting causes of action against defendants other than the Cardenas were also included in the sum. Moreover, the causes of action asserted against the other defendants and operative facts underlying them were distinct from those entitling the Varners to recovery against the Cardenas.

The Varners cite us to no authority obligating the Cardenas to pay for attorney's fees incurred by the Varners in prosecuting distinct claims against distinct parties and involving distinct facts. Thus, they were obligated to segregate the recoverable fees from those that were not. And, while the trial court awarded less fees than requested (approximately $40,000 instead of $45,000), we cannot say, upon the record before us, that the difference equaled the amount incurred in prosecuting the claims against the other defendants. Thus, the issue of fees must be remanded to the trial court. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d at 12.

The same can be said of the fees incurred in defending against the Cardenas' counterclaim. The latter was based not upon the note and vendor's lien. Nor did they attempt to vitiate or otherwise alter either instrument.[2] Rather, they sued for breach of the

---

[2]It should be recalled that the Cardenas did not include in their live pleading a demand for reformation of the note or lien.

underlying sales contract.  Furthermore, the damages sought represented the difference in cost between the acreage they thought they acquired and the acreage that they actually received.  The difference was then to be used to reduce (by offset) the sum due under the note.  So, while there was some relationship between the claims, the causes of action differed.  Moreover, the operative facts upon which they depended were not so intertwined as to be inseparable.  Thus, the fees incurred by the Varners in prosecuting their claims were capable of segregation from those incurred in defending against the counterclaim.

*Third Issue – Pre and Post-Judgment Interest*

The Cardenas next complain about the trial court's application of the default interest rate to the sums found outstanding.  That rate, as specified in the note, was 18% per annum.  Furthermore, their argument is two-fold.  We address each part in turn.

First, they assert that because the trial court afforded them some relief by reforming the agreement, they were not in default.  Our having determined that the trial court erred in reforming the contract price vitiates this contention, however.

The next ground of contention concerns the acceleration of the note payments.  According to the Cardenas, no evidence exists of record establishing that the Varners accelerated payment of the note prior to the date of suit.  And, because of that circumstance, the trial court could not order that the entire balance under the note accrue interest at 18% from the date the Cardenas first failed to make an installment payment.  We agree.

The promissory note executed by the Cardenas had a principal of $185,000.  That principal, with accrued interest, was to be paid through equal annual installments of $34,448.66.  The first installment was due on December 15, 1998, and it is undisputed that

6

the Cardenas made one payment of $34,448.66. Under the terms of the note, the second payment was due on December 15, 1999. However, it was not paid, nor was any other. The Varners then sued to collect the entire principal on July 27, 2000, or approximately five months before the third installment fell due. And, the allegation in their petition and pertaining to acceleration simply involved the statement that "all sums due and owing under the terms of said note have been declared accelerated and past due and owing."

Our review of the record uncovered no evidence illustrating that the Varners ever notified the Cardenas of their intent to accelerate the note. Similarly undiscovered was evidence of actual acceleration any time before July 27, 2000. Nor did either party cite us to any such evidence. Nonetheless, the trial court ordered, via its judgment, that interest accrue on the entire unpaid principal at the rate of 18% from December 15, 1998. The latter date was one year before the second installment was due and the Cardenas breached the terms of the note.

To lawfully accelerate a promissory note (assuming, of course, the creditor has the right to accelerate), the creditor must afford the debtor notice of its intent to accelerate and of actual acceleration. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566-67 (Tex. 2001); *Baldazo v. Villa Oldsmobile, Inc.*, 695 S.W.2d 815, 817 (Tex. App.–Amarillo 1985, no writ). Moreover, notice that the debt was accelerated has no legal effect unless preceded by notice of intent to accelerate. *Baldazo v. Villa Oldsmobile, Inc.*, 695 S.W.2d at 817. Given the want of evidence illustrating that the Cardenas were ever notified of the Varners' intent to accelerate, the Varners did not prove lawful acceleration. Thus, the trial court erred in not only concluding that the entire unpaid principal was due on December 15,

7

1998, but also that interest at the default rate (or 18%) accrued on the entire sum as of that date.

*Fourth Issue – Post-Judgment Interest on Attorney's Fees and Court Costs*

Next, the Cardenas allege that the trial court erred in ordering that interest accrue at the rate of 10% on the award of attorney's fees. The correct rate was 5%, they contend. The Varners concede the issue. Therefore, we sustain it.

*Final Issue – Award of Cost for Survey*

The final issue before us involves that portion of the judgment awarding the Cardenas "their survey costs in the amount of $7,000.00." The Varners contend that the trial court had no basis for doing so. We sustain the issue.

To the extent the award may have been made as part of the assessment of court costs, we note that the survey in question was not ordered by the trial court. *See* Tex. R. Civ. P. 796 (allowing the trial court to appoint a surveyor to survey the premises in controversy). Nor did the trial court appoint the surveyor. Authority holds that if the surveyor is not appointed by the court and acts solely on behalf of one party, his fees may not be assessed as costs. *Whitley v. King,* 581 S.W.2d 541, 544 (Tex. Civ. App.–Fort Worth 1979, no writ). Given *Whitley* and the evidence indicating that the Cardenas unilaterally hired the surveyor, the fees incurred in conducting a survey cannot be taxed to the Varners as court costs.

Nor can the award be viewed as damages or relief due to any purported breach of contract. While it may be that the Varners allegedly agreed to provide their opponents with a survey and ultimately did not, nothing was said about the obligation in the counterclaim

8

filed by the Cardenas. So too did the Cardenas omit from their live pleading any request for equitable relief; thus, their suggestion on appeal that the fee was awarded "as an equitable remedy" lacks foundation. Finally, no one posits that the cause of action entitling the Cardenas to recover the expense was tried by consent. Because the relief granted must conform to the live pleadings, TEX. R. CIV. P. 301; *see Cunningham v. Parkdale Bank*, 660 S.W.2d at 812-13 (stating that a party may not be granted relief in absence of pleadings to support that relief), and the relief in question was not encompassed by the Cardenas' pleadings, the trial court erred in awarding it. *See Cunningham v. Parkdale Bank*, 660 S.W.2d at 812-13 (stating that a judgment must be supported by the pleadings, and, if it is not, then it is erroneous).

In sum, we reverse that portion of the judgment reforming the purchase price of the land and, thereby, reducing the outstanding principal of the promissory note by $57,767 to $105,914.00 and render judgment that the unpaid principal was and is $163,681.00. Next we reverse that portion of the judgment awarding the Varners their attorney's fees, sever that issue from this appeal, and remand it to the trial court. Next, we reverse that portion of the judgment awarding the Cardenas $7,000 for the cost of the survey. Finally, we reverse that portion of the judgment declaring that prejudgment interest accrue on the entire unpaid principal at the rate of 18% from December 15, 1998, until judgment and remand the issue to the trial court for further proceedings. In all other aspects, the judgment is affirmed.


Brian Quinn
Chief Justice


9