NO. 07-09-00387-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 28, 2011

W. J. COLLIER, APPELLANT

v.

ROBERT EDWARD HALL TRUST
AND KATHY JEAN HALL TRUST, APPELLEES

FROM THE 39TH DISTRICT COURT OF KENT COUNTY;

NO. 1645; HONORABLE SHANE HADAWAY, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, W. J. Collier (Collier), appeals from the trial court's judgment in favor of appellees, Robert Edward Hall Trust and Kathy Jean Hall Trust (appellees). Collier challenges the legal and factual sufficiency of the evidence to support the jury's answers to the controlling jury questions and the trial court's calculation of prejudgment interest. We affirm in part and reverse and remand in part.

Factual and Procedural Background

In 2002, the controlling stockholders in the Kent County State Bank, Bob Hamilton and Robert G. Hall, entered into an arrangement to sell their stock to Tom Darden, Jesse Reese, and Collier. The agreement to purchase the stock of Robert G. Hall was eventually culminated by the payment of cash and the signing of a promissory note by the three named individuals in favor of Robert G. Hall.[1] The original amount of the note to Hall was $94,145.00. No principal payments were ever made on this original note.

Robert G. Hall died and the note became part of his estate. Subsequently, Robert Edward Hall (Hall), the son of Robert G. Hall, entered into an agreement for the execution of a new note in favor of the Robert Edward Hall Trust and the Kathy Jean Hall Trust. In addition, there appears to have been an agreement whereby some of the interest due on the original note was paid before the new note was executed. On June 15, 2005, a new note was executed by Collier and Reese. A signature line for Darden appears on the new note; however, Darden never signed the note. In fact, the issue of the lack of Darden's signature became the focal point of the subsequent litigation. The new note called for payment of quarterly installments, with the first installment being due on October 10, 2005. Subsequent to the signing of the new note, Reese filed bankruptcy. Hall sent a notice reminding Collier of the upcoming quarterly payment on September 14, 2005. No payments of principal or interest were ever made on the note.

---

[1] Darden, Reese, and Collier also paid cash and signed a note in favor of Bob Hamilton for Hamilton's stock. That note and its successor note are not involved in this litigation.

Suit was subsequently filed to collect the principal of the note, interest, and reasonable attorney fees.

During the trial, the evidence surrounding the execution of the note was hotly contested, as was the factual issue of who was responsible for preparation of the note. At the conclusion of the testimony, the jury was asked if the signature of Darden was a condition precedent to the formation of the agreement of the parties. The jury answered "No." In the next question, the jury found that Collier failed to comply with the note's terms. The final questions dealt with the amount of damages and reasonable and necessary attorney fees for trial of the case. After receiving the jury's answers to the questions, the trial court entered a judgment in favor of appellees for $94,145.00, plus pre-judgment interest in the sum of $54,713.60, reasonable and necessary attorney fees of $16,664.00, and post-judgment interest on the total of $166,522.60. Collier perfected his appeal and contends that the evidence is both legally and factually insufficient to support the jury's answers to the questions asked. Further, Collier contends that, because there was a lack of proper notice of acceleration of the note's payment terms, the trial court's calculation of pre-judgment interest is in error. We will affirm in part and reverse and remand in part.

## Sufficiency of the Evidence

### Standards of Review

Before beginning our standards of review for the challenges to the sufficiency of the evidence that Collier has propounded, we should point out that the issue of whether or not the signature of Tom Darden was a condition precedent to the formation of the

3

agreement between the parties was pleaded as an affirmative defense by Collier. See TEX. R. CIV. P. 94. Therefore, this issue is one that Collier bore the responsibility of proving. See Compass Bank v. MFP Fin. Servs., 152 S.W.3d 844, 851 (Tex.App.—Dallas 2005, pet. denied).

Legal Sufficiency

According to City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005), "'No evidence' points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact." When reviewing an attack on the legal sufficiency on an issue that the appellant has the burden of proof, we review the evidence supporting the jury's finding to determine whether all facts are established for the contrary position as a matter of law. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)). Our review consists of our viewing the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding all contrary evidence unless reasonable jurors could not. City of Keller, 168 S.W.3d at 820. Finally, we may not substitute our judgment for that of the trier of fact as long as the evidence would allow reasonable and fair-minded people to differ in their conclusions. Id. at 822. This is but another way of saying that as long as there is at least a scintilla of evidence to support the jury's

4

answer to the fact question at issue; the legal sufficiency challenge must fail.  Tarrant

Reg'l Water Dist. v. Gragg, 151 S.W.3d 546, 552 (Tex. 2004).

Factual Sufficiency

In a factual sufficiency review, we consider all of the evidence both supporting

and contrary to the jury's answer to the fact question at issue.  Plas-Tex, Inc. v U.S.

Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  Because the jury question involved in

our analysis was one that Collier bore the burden of proof, we will only reverse if we find

that the jury's answer is against the great weight and preponderance of the evidence.

Dow Chem. Co., 46 S.W.3d at 242.  In order to reverse on a factual sufficiency point,

we will have to be convinced that the jury's answer to the question at issue was clearly

wrong and manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

Evidence

Collier's contention is that Darden's signature was a condition precedent to the

formation of any agreement represented by the note of June 15, 2005.  The evidence

before the jury regarding the events when the note was signed consisted of the

testimony of Hall, Hamilton, and Collier.  Hall testified that the note signed on June 15,

2005, was furnished by Collier.  He did not know who prepared the note but affirmatively

testified that he did not prepare it and that Collier brought the note to him.  Further, Hall

testified that it was never a condition for payment of the note that he obtain Darden's

signature on the note.  In fact, during direct examination, Hall raised the question of why

he would trade a good note, meaning the old note, for one that was conditioned as

suggested by Collier.  Hamilton, one of the original stockholders, also executed a new

5

note in 2005 that contained the same terms as the note at issue. Hamilton testified that, when he signed the 2005 note, Collier brought the note to the meeting. Further, Hamilton testified that there was no discussion with Collier that Darden was required to sign the new note before it became enforceable. When Collier testified about the drafting of the note at issue and whether he or Hall furnished the note, the following testimony was heard:

> Q. Do you remember if either you drafted it or somebody drafted it at your instruction?
>
> A. I don't remember that, no, sir.
>
> Q. Okay. You're not saying that didn't happen. You're just saying you don't remember.
>
> A. Correct.

Collier also testified that it was his understanding that Hall would mail the note to Darden in an attempt to obtain Darden's signature. Finally, Collier testified that it was his intent that all three of the original debtors sign the note.

The note was presented to the jury and is in the record before this Court. Upon examination, the following observations can be made. First, all three names appear as makers of the note in the body of the note. Second, after the naming of the three makers of the note, there is a parenthetical notation in the plural (Borrowers). Third, all other references to the borrowers are by the singular (borrower). Fourth, there is a blank signature line for Darden's signature. Finally, there are no instructions to obtain the signature of all parties before the note will become enforceable. Likewise, there are no limitations on the signature of Reese and Collier regarding the enforceability of the note without Darden's signature.

As the last bit of evidence, each side offered expert testimony from a banker regarding the status of the note at issue. Swenson, the expert for appellees, testified that, if there were conditions to the issuance of the note, those conditions should be stated on the note. Further, Swenson opined that he did not find any conditions that would operate to invalidate the note. Collier's expert, Crouse, testified that if, in fact, the obtaining of Darden's signature was a condition placed on the promissory note and the signature was not obtained, the note would be null and void. However, Crouse never affirmatively testified that Darden's signature was a condition placed on the note.

Analysis

### Legal Sufficiency

Reviewing the above evidence in the light most favorable to the answer of the jury to the question, as we must in this review, see City of Keller, 168 S.W.3d at 820, we find that there is more than a scintilla of evidence to support the jury's answer. See Tarrant Reg'l Water Dist., 151 S.W.3d at 552. Collier's position on the issue is not established as a matter of law. See Dow Chem. Co., 46 S.W.3d at 241. Accordingly, Collier's issue regarding the legal sufficiency of the evidence to support the jury's answer to question number one is overruled.

### Factual Sufficiency

Remembering that we are required to view all of the evidence when conducting a factual sufficiency review, Plas-Tex, Inc., 772 S.W.2d at 445, we must determine whether the jury's answer is so against the great weight and preponderance of the

7

evidence, <u>Dow Chem. Co.</u>, 46 S.W.3d at 242, so as to make the jury's answer to question number one manifestly wrong and unjust. <u>See</u> <u>Cain</u>, 709 S.W.2d at 176.

Our review of the evidence leads us to conclude that the jury was faced with competing evidence at almost every turn. Hall and Hamilton testified that Collier furnished the note in question. Collier testified that he did not personally prepare the note; however, as to whether he might have furnished the note, Collier's testimony was more equivocal. He said he did not remember. As to the issue of conversations about Darden's signature being required as a condition for the creation of the note, Hall and Hamilton testified that there was no such discussion. Further, each testified that there was no discussion of their needing to obtain Darden's signature on the note. Collier, on the other hand, testified it was his "understanding" that Hall and Hamilton would obtain Darden's signature. Appellees' expert said that if there was a condition to the validity of the note, the same should be evidenced on the face of the note and that he found none. Interestingly, Collier's expert testified that, if, in fact, obtaining Darden's signature was a condition of the note, then a note without the signature would be a nullity. Clearly, the jury could have accepted the testimony of both experts and still validly answered question number one, "No." This is so because the answer given by Collier's expert simply identifies the effect that a condition on the note would have, but nowhere does he testify that there was a condition on the note in question. The note was introduced and, from our view, does not seem to contain any specific condition or limitation regarding the execution and validity of the note. Finally, it is up to the jury to resolve conflicts in the testimony and determine the weight and value to assign to the testimony they hear. <u>See</u> <u>Leyva v. Pacheco</u>, 163 Tex. 638, 358 S.W.2d 547, 549 (1962).

Accordingly, we find that there was factually sufficient evidence to support the jury's answer to question number one and, accordingly, we overrule Collier's factual sufficiency issue.

## Prejudgment Interest

Collier's last issue contends that the trial court abused its discretion by its incorrect calculation of prejudgment interest. The substance of Collier's issue is that there was no valid acceleration of the installments not yet due on the note in question.

<u>Standard of Review</u>

An appellate court reviews a trial court's award of prejudgment interest under an abuse of discretion standard of review. See <u>Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.</u>, 139 S.W.3d 342, 348 (Tex.App.—Fort Worth 2004, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. See <u>Downer v. Aquamarine Operators, Inc.</u>, 701 S.W.2d 238, 241-42 (Tex. 1985).

<u>Law</u>

Prejudgment interest is the compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between accrual of the claim and the date of judgment. See <u>Brainard v. Trinity Universal Ins. Co.</u>, 216 S.W.3d 809, 812 (Tex. 2006). Accrual, as used in our factual situation, would mean that the interest did not run on the unpaid installments until acceleration occurred. See <u>Varner v. Cardenas</u>, 218 S.W.3d 68, 70 (Tex. 2007) (holding that, since the note in

9

question did not waive notices regarding acceleration, interest ran on the unpaid installments only after acceleration occurred.)

Analysis

The trial record reflects that no notice of acceleration was sent by appellees to Collier until June 29, 2006. This notice was sent by a law firm employed by Hall. Subsequently, on October 5, 2006, the Robert Edward Hall Trust sent a demand letter that was styled "Final Demand Before Suit." In this demand letter, the trust demands the payment of the full principal balance plus accrued interest through the day of the letter or suit will be filed.

Appellees contend that the notice of payment due, sent by Hall on September 14, 2005, constituted notice of default and acceleration. However, this contention is not supported by the letter in question. All the letter of September 14, 2005, does is remind Collier that a payment was due on October 10, 2005. Since the letter was sent out before the payment was due, it could not have been a notice of default, intent to accelerate, or notice of actual acceleration because the event of default, installment being due, had not even occurred.

Next, appellees contend that the note in question provides for automatic waiver of notice of acceleration in the event of default. Thus, according to appellees' analysis, the trial court did not act without reference to guiding rules or principles and, accordingly, did not abuse its discretion. Downer, 701 S.W.2d at 241-42. The problem with appellees' analysis of the note's language regarding waiver is that it is, by its own terms, conditional. The note clearly states that, in the event of default in the payment of

principal and interest **after demand is made,** the unpaid balance shall, at the option of the holder, become immediately due. As reflected in the discussion in the preceding paragraph, the record reflects that demand was not made until, at the earliest, the letter of June 29, 2006. Accordingly, appellees' contention that acceleration was automatic and notice was waived is not correct.

Appellees also contend that Collier is precluded from asserting the affirmative defense of lack of notice of acceleration because it was not affirmatively pled pursuant to rule 94 of the Texas Rules of Civil Procedure. See TEX. R. CIV. P. 94. To support this proposition, appellees cite the Court to Espinoza v. Victoria Bank & Trust Co., 572 S.W.2d 816 (Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.). However, this Court has held, in Cardenas v. Varner, 182 S.W.3d 380, 385 (Tex.App.—Amarillo 2005), modified on other grounds, 218 S.W.3d 68 (Tex. 2007), that, to lawfully accelerate a promissory note, the creditor must afford the debtor notice of its intent to accelerate and actual acceleration. This holding was based upon the Texas Supreme Court's holding in Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566-67 (Tex. 2001). Our analysis indicates that Cardenas is a proper statement of the law on this issue. This is so because, when the holder of a promissory note has the option to accelerate maturity of the note upon default by the maker, equity demands notice be given of the intent to exercise that option. See Ogden v. Gibraltar Savs. Ass'n, 640 S.W.2d 232, 233 (Tex. 1982). For these reasons, we decline to follow the Espinoza case, as proffered by appellees.

We find that the trial court's award of prejudgment interest is an abuse of discretion.  Accordingly, we sustain Collier's issue regarding prejudgment interest.

## Conclusion

We affirm the judgment of the trial court as to the underlying note and reverse the trial court's determination of prejudgment interest.  The case is remanded to the trial court to properly calculate prejudgment interest in conformity with this opinion.


Mackey K. Hancock
Justice