# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00527-CV

**Texas Entertainment Association, Inc. and Karpod, Inc., Appellants //
Susan Combs, Comptroller of Public Accounts of the State of Texas, and
Greg Abbott, Attorney General of the State of Texas, Cross-Appellants**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and
Greg Abbott, Attorney General of the State of Texas, Appellees //
Texas Entertainment Association, Inc. and Karpod, Inc., Cross-Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-07-004179, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

This case concerns the constitutionality of subchapter B of chapter 102 of the Business and Commerce Code, which requires certain sexually oriented businesses to pay the State an amount equal to $5 for each customer who is admitted into each business. *See* Tex. Bus. & Com. Code §§ 102.052–.056; *see also Combs v. Texas Entm't Ass'n, Inc.*, 287 S.W.3d 852, 856–57 (Tex. App.—Austin 2009, pet. granted) (discussing operation of sexually-oriented-business tax). On original submission, this Court affirmed the trial court's judgment that this statute—which we refer to as the sexually-oriented-business tax—violates the First Amendment to the United States Constitution. *Texas Entm't Ass'n*, 287 S.W.3d at 863–64. The Texas Supreme Court reversed this Court's judgment, concluded that the sexually-oriented-business tax does not violate the First

Amendment, and remanded the case to the trial court to consider the plaintiffs' state-law claims. *See Combs v. Texas Entm't Ass'n, Inc.*, 347 S.W.3d 277, 288 (Tex. 2011).

On remand, the trial court concluded that the sexually-oriented-business tax is an occupation tax that does not violate the Texas Constitution. Texas Entertainment Association, Inc. and Karpod, Inc. (collectively the TEA) brought this appeal, asserting that the sexually-oriented-business tax violates the Texas Constitution because (1) it is an occupation tax that fails to allocate 25% of its revenue to public schools; (2) it is not an equal and uniform tax; and (3) it is a prior restraint on free speech. On cross-appeal, Susan Combs, Comptroller of Public Accounts for the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, the Comptroller), assert that the trial court erred in concluding that the sexually-oriented-business tax is an occupation tax. Because we conclude that the sexually-oriented-business tax is not an occupation tax, we affirm the trial court's judgment in part and reverse and render in part.

## BACKGROUND

The history and structure of the sexually-oriented-business tax is fully discussed in the supreme court's opinion and will be repeated here only as necessary to dispose of the issues in this appeal. *See id.* at 278–79. The sexually-oriented-business tax requires sexually oriented businesses to remit to the Comptroller an amount equal to $5 for each customer who is admitted into each business.[1] *See* Tex. Bus. & Com. Code § 102.052(a). A sexually oriented business is defined as

---

[1] The parties originally disputed whether this statute imposed a tax or a fee. *See Combs v. Texas Entm't Ass'n, Inc.*, 287 S.W.3d 852, 856 n.2 (Tex. App.—Austin 2009), *rev'd on other grounds*, 347 S.W.3d 277, 288 (Tex. 2011). This issue was not resolved at the trial court and the parties do not raise it on appeal. Given that the primary dispute in this case concerns whether the relevant statute is an occupation tax, we refer to the statute as a tax for the sake of convenience.

2

a "nightclub, bar, or similar commercial enterprise" that (1) features live nude entertainment for an audience of two or more and (2) allows the consumption of alcohol on the premises. *Id.* § 102.051(2); *see also id.* § 102.051(1) (defining "nude" for purposes of statute).

On remand to the trial court, the TEA primarily asserted that the sexually-oriented-business tax is an occupation tax, and therefore 25% of its revenue must be allocated to public schools. *See* Tex. Const. art. VII, § 3(a). Given that the sexually-oriented-business-tax statute specifies that its revenue must be allocated to the "sexual assault program fund" and "health opportunity pool," the TEA argued that the statute was an unconstitutional occupation tax. *See* Tex. Bus. & Com. Code §§ 102.054–.055(a); *see also Conlen Grain & Mercantile, Inc. v. Texas Grain Sorghum Producers Bd.*, 519 S.W.2d 620, 627 n.3 (Tex. 1975) (Daniel, J., dissenting) (noting that party can challenge constitutionality of occupation tax on basis that tax fails to allocate 25% of revenue to public schools).

In response, the Comptroller argued that the sexually-oriented-business tax is a "general excise tax," rather than an occupation tax, and thus there is no requirement that 25% of the revenue generated from the tax be allocated to public schools. *See Blacks Law Dictionary* 646 (7th ed. 1999) (defining excise tax as "tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)").[2]

---

[2] As the Comptroller acknowledges, an occupation tax is, by definition, "a form of excise tax imposed upon a person for the privilege of carrying on a business or trade." *El Paso Apartment Ass'n v. City of El Paso*, 415 Fed. Appx. 574, 580 (5th Cir. 2011) (quoting *Conlen Grain & Mercantile, Inc. v. Texas Grain Sorghum Producers Bd.*, 519 S.W.2d 620, 624 (Tex. 1975)). Not all excise taxes are occupation taxes, and therefore when we refer to a "general excise tax," we mean a non-occupation excise tax. *See, e.g.*, *Virginia Indon. Co. v. Harris Cnty. Appraisal Dist.*, 910 S.W.2d 905, 925 (Tex. 1995) (noting that sales tax is form of excise tax); *Universal Frozen*

3

Alternatively, the Comptroller asserted that if the sexually-oriented-business tax is an occupation tax, the article 7, section 3 requirement that 25% of the tax's revenue go to public schools is "self-executing," and therefore 25% of its funding should go to public schools regardless of whether that requirement is specifically expressed in the statute.

Following a bench trial, the trial court concluded that the sexually-oriented-business tax is an occupation tax, but that the constitutional requirement that 25% of its revenue be allocated to public schools is self-executing, and thus the tax is constitutional. The court held that the Comptroller has the authority to allocate 25% of the tax's revenue to public schools and then allocate the remainder to the funds indicated in the statute. *See* Tex. Bus. & Com. Code §§ 102.054–.055(a). The trial court also concluded that the sexually-oriented-business tax did not violate the Equal and Uniform Clause or Free Speech Clause of the Texas Constitution and denied the remainder of the TEA's requested relief. *See* Tex. Const. art. I, § 8, art. VIII, §§ 1–2. This appeal followed.

## DISCUSSION

The TEA raises three issues on appeal. First, it asserts that the sexually-oriented-business tax is an occupation tax that is unconstitutional because it fails to allocate 25% of its revenue to public schools. Second, the TEA claims that the tax is not equal and uniform because it applies only to businesses that provide live nude entertainment to audiences of two or more. Lastly, the TEA argues that the sexually-oriented-business tax is an unconstitutional prior restraint on free speech.

---

*Foods Co. v. Rylander*, 78 S.W.3d 588, 590 (Tex. App.—Austin 2002, no pet.) (noting that franchise tax is type of excise tax); *but see In re Nestle USA, Inc.*, 387 S.W.3d 610, 621 (Tex. 2012) (orig. proceeding) (noting that franchise tax "is very similar to an occupation tax").

On cross-appeal, the Comptroller asserts that the sexually-oriented-business tax is a general excise tax, and thus there is no requirement that the 25% of its revenue be used for public schools. The Comptroller also asserts that Texas Entertainment Association, Inc. is jurisdictionally barred from this suit because it has not satisfied the requirements of chapter 112 of the Tax Code. We address the Comptroller's second issue on cross-appeal first because it concerns the trial court's jurisdiction over one of the parties to this appeal.

**Sovereign Immunity**

In its second issue on cross-appeal, the Comptroller asserts that Texas Entertainment Association, Inc., as an organization that is not subject to the sexually-oriented-business tax, is barred from participating in this appeal because chapter 112 of the Tax Code requires a party challenging a tax to file a protest payment.[3]  *See* Tex. Tax Code § 112.051.  We addressed and rejected this argument in our previous opinion, concluding that "[d]eclaratory-judgment actions against state officials challenging the constitutionality of a statute do not implicate the sovereign-immunity doctrine because they are not considered suits against the State." *Texas Entm't Ass'n*, 287 S.W.3d at 865 (internal quotations omitted), *rev'd on other grounds*, 347 S.W.3d at 288. Although the supreme court overruled our conclusion that the sexually-oriented-business tax violates the First Amendment, the court did not discuss our sovereign immunity analysis. *See Texas*

---

[3]  Of course, chapter 112 only mandates that the "person who is required to pay a tax or fee" must make a protest payment before bringing a suit to challenge a tax. *See* Tex. Tax Code § 112.051. Therefore, even if the Comptroller is correct and chapter 112 generally applies to taxpayer associations, by the Comptroller's own acknowledgment those associations are not persons who are required to pay the disputed taxes and fees, and thus they are not required to make protest payments before bringing suit. *See id.*

*Entm't Ass'n*, 347 S.W.3d at 288. There have been no intervening opinions from the supreme court that would justify revisiting this issue. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) (noting that under law-of-the-case doctrine, court of appeals "ordinarily bound by its initial decision" in subsequent appeals for same case). For the reasons stated in our prior opinion, we overrule the Comptroller's second issue on cross-appeal. *See Texas Entm't Ass'n*, 287 S.W.3d at 865.

**Is the sexually-oriented-business tax an occupation tax?**

Having disposed of the jurisdictional issue raised by the Comptroller, we must next determine another threshold matter raised in the Comptroller's first issue on cross appeal—whether the sexually-oriented-business tax is an occupation tax or a general excise tax. If, as the Comptroller asserts, it is a general excise tax, then the trial court erred in concluding that 25% of the revenue generated from the tax must go to public schooling. On the other hand, if the sexually-oriented-business tax is an occupation tax, we must determine whether the statute's failure to specify that 25% of its revenue will go to public schooling makes the statute invalid. *See* Tex. Const. art. VII, § 3.

*Preservation*

The TEA asserts that the Comptroller failed to preserve its argument that the sexually-oriented-business tax is a general excise tax for cross-appeal. Specifically, the TEA contends that the Comptroller's notice of appeal only challenges the trial court's orders denying its plea to the jurisdiction and motion to dismiss, rather than the trial court's final judgment. *See* Tex. R. App. P. 25.1(b)–(c) (requiring party seeking to alter trial court's judgment to file notice of appeal to invoke appellate court's jurisdiction). Although the TEA asserts that this is a preservation issue, it is more

6

accurately characterized as a complaint that the Comptroller failed to invoke our appellate jurisdiction. *See id.*; *Wright v. Texas Comm'n on Human Rights*, No. 03-03-00710-CV, 2005 WL 1787428, at *1 (Tex. App.—Austin July 27, 2005, pet. denied) (mem. op.).

Timely filing a notice of appeal is necessary to invoke this Court's appellate jurisdiction, but once that jurisdiction is invoked, the party who filed the notice of appeal may raise any complaint that was preserved at trial. *See Wright*, 2005 WL 1787428, at *1; *Anderson v. Long*, 118 S.W.3d 806, 809 (Tex. App.—Fort Worth 2003, no pet.). A party does not limit "his issues on appeal by gratuitously listing only some of those issues in his notice of appeal." *Vazquez v. Vazquez*, 292 S.W.3d 80, 82–83 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Similarly, a notice of appeal that complains about specific orders that are later merged into the final judgment does not waive a party's right to complain about other orders or issues concerning the final judgment. *See Anderson*, 118 S.W.3d at 809 (concluding that notice complaining about denial of plea to the jurisdiction did not preclude complaint about propriety of summary judgment); *see also Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 386 (Tex. App.—Dallas 2012, no pet.) (concluding that listing interlocutory order in notice of appeal "is immaterial because the rules do not require appellant to list . . . every interlocutory ruling the appellant may wish to challenge").

In this case, the Comptroller timely filed its notice of appeal after the trial court entered its final judgment, thereby invoking this Court's appellate jurisdiction. The fact that the Comptroller's notice of appeal only complains about the trial court's denial of its plea to the jurisdiction and motion to dismiss is immaterial and does not limit the issues that the Comptroller may complain of on appeal. *See Wright*, 2005 WL 1787428, at *1. Furthermore, the record clearly

7

demonstrates that the Comptroller preserved its argument that the sexually-oriented-business tax is a general excise tax at trial.[4] *See* Tex. R. App. P. 33.1(a) (listing preservation of error requirements). Therefore, we proceed to consider the merits of the Comptroller's first issue on cross-appeal.

*Defining occupation tax*

This case presents a relatively rare issue in Texas law—what distinguishes an occupation tax from other excise taxes? We have found only one case, written in 1940, in which a court addressed whether a particular excise tax was an occupation tax. *See State v. City of El Paso*, 143 S.W.2d 366, 369–70 (Tex. 1940). That case involved a tax on gasoline that was used in Texas, and the supreme court summarily concluded that "[b]y no known rule of law can a tax levied on such use be classed as an occupation tax." *See id.* This precedent offers little guidance on the question before us today.

Furthermore, nearly all of the cases cited by the parties concern whether (1) a given occupation tax is equal and uniform or (2) an alleged occupation tax is a tax or a regulatory fee. *See, e.g.*, *Conlen Grain*, 519 S.W.2d at 624 (concluding that government charge on businesses that produce agricultural commodity was occupation tax rather than fee); *Calvert v. McLemore*, 358 S.W.2d 551, 552 (Tex. 1962) (concluding occupation tax was not equal and uniform because

---

[4] The TEA claims that the Comptroller abandoned its argument that the sexually-oriented-business tax is a general excise tax by stating that the tax is an occupation tax in its proposed findings of fact and conclusions of law. The Comptroller filed its proposed findings after the trial court entered its judgment, including the court's conclusion that the tax is an occupation tax. Therefore the Comptroller's proposed findings did not abandon the arguments that the Comptroller made at trial. *See Cardenas v. Varner*, 182 S.W.3d 380, 382 (Tex. App.—Amarillo 2005), *aff'd as modified on other grounds*, 218 S.W.3d 68 (Tex. 2007).

8

it did not apply to businesses that exhibit motion pictures in movie theaters).  Some of these cases offer general definitions of what an occupation tax is but do not attempt to distinguish it from other excise taxes.  Nevertheless, the definition of an occupation tax offers guidance in this case.

The supreme court has stated that an "occupation tax is a form of excise tax imposed upon a person for the privilege of carrying on a business, trade or occupation." *Conlen Grain*, 519 S.W.2d at 624.  Therefore, in determining whether the sexually-oriented-business tax is an occupation tax, we consider whether the tax was imposed upon sexually oriented businesses primarily for the privilege of doing business in Texas.  As the supreme court recently explained, when the legislature imposes a tax on the privilege of doing business in Texas, the "tax's classifications must relate to differences in doing business that affect the value of the privilege" of doing business. *In re Nestle USA, Inc.*, 387 S.W.3d 610, 622 (Tex. 2012) (orig. proceeding) (discussing whether franchise tax was still tax on privilege of doing business in Texas).  Conversely, when a tax's classifications do not relate to differences that affect the value of doing business, the tax is not a tax on the privilege of doing business in Texas, and thus is not an occupation tax. *See id.* at 622–23.

Whether a particular excise tax is an occupation tax is an issue of statutory construction.  Statutory construction is a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008).  When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Id.* at 631–32.  In determining legislative intent, we first consider the plain language of the statute. *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would

9

produce an absurd result. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Only when the statutory text is ambiguous "do we resort to rules of construction or extrinsic aids." *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.) (internal quotations omitted); *see also Combs v. Metropolitan Life Ins. Co.*, 298 S.W.3d 793, 796–97 (Tex. App.—Austin 2009, pet. denied). Having determined the applicable definition and scope of review, we now consider whether the sexually-oriented-business tax is an occupation tax. In making this determination, we are mindful both of the language of the statute itself and the supreme court's recent analysis of this tax. *See* Tex. Bus. & Com. Code §§ 102.052–.056; *Texas Entm't Assn.*, 347 S.W.3d at 286–88.

*Analysis*

Viewing the statute as a whole, the sexually-oriented-business tax does not appear to be a tax on the privilege of doing business in Texas. The classification in the sexually-oriented-business tax does not relate to the privilege of operating a nude entertainment business in Texas—it relates only to whether the business provides live nude entertainment while allowing alcohol consumption. *See* Tex. Bus. & Com. Code § 102.051. As the supreme court noted, "[a]n adult entertainment business can avoid the [sexually-oriented-business tax] altogether simply by not allowing alcohol to be consumed." *Texas Entm't Ass'n*, 347 S.W.3d at 288. Thus, the tax is not based on the value of operating a nude-entertainment business in Texas.

Similarly, the tax is not related to the value of selling alcohol at a business that provides live nude entertainment. The language of the statute clearly states that it applies to all nude-entertainment businesses which *allow* alcohol consumption on their premises, regardless of

10

whether the business sells or provides the alcohol. *See* Tex. Bus. & Com. Code § 102.051(2)(B). Therefore, the sexually-oriented-business tax's classification is not based on the value of the privilege of operating an adult entertainment business that sells alcohol.

As the supreme court emphasized, the sexually-oriented-business tax "is not a tax on unpopular speech but a restriction on combining nude dancing . . . with the aggravating influence of alcohol consumption." *Texas Entm't Ass'n*, 347 S.W.3d at 287–88. "[L]ogic and the evidence indicate that the [sexually-oriented-business tax] provides some discouragement to combining nude dancing and alcohol consumption." *Id.* at 287. Furthermore, the first $25,000,000 generated by the tax is directed to the sexual assault program fund, which is a program designed to address many of "the negative secondary effects of nude entertainment, especially in the presence of alcohol." *See id.* at 280 (listing rape, sexual assault, and prostitution as "criminal ills" that result from this activity). Thus, the primary purpose of the sexually-oriented-business tax is not to tax these businesses for the privilege of providing nude entertainment in the presence of alcohol consumption. Rather, the tax's primary purpose is to discourage this type of business activity altogether while also generating revenue to ameliorate the type of social ills that are associated with this type of business.[5] *See id.*

This interpretation of the sexually-oriented-business tax's purpose is consistent with the terminology of the statute itself. Although we refer to the sexually-oriented-business tax as a tax,

---

[5] In this sense, the sexually-oriented-business tax operates similarly to a cigarette tax that requires "smokers [to] pay high taxes to reduce consumption and increase government revenue." *Department of Revenue of Mont.v. Kurth Ranch*, 511 U.S. 767, 782 (1994); *see also* Tex. Tax Code §§ 154.001–.6035. Thus, a so-called "sin tax"—such as a cigarette tax—discourages socially harmful activity through higher taxation. *See Stennett* v. *State*, 905 S.W.2d 612, 614 (Tex. App.—Houston [14th Dist.] 1995), *aff'd*, 941 S.W.2d 914, 917 (Tex. Crim. App. 1996).

the statute itself discusses it as a fee. *See* Tex. Bus. & Com. Code §§ 102.052–.056; *supra* n.1.

Whether a revenue provision identifies itself as a tax or fee is not determinative of our analysis. *See*

*TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173 n.3 (Tex. 2012)

(noting that legislature's labeling of putative tax as fee is not binding on courts). Nevertheless, we

recognize that the legislature knows how to label a given revenue provision as an occupation tax

when it so chooses. *See, e.g.*, Tex. Tax Code §§ 181.201 (identifying tax on cement producers as

occupation tax), 191.121 (identifying taxes listed in chapter 191 of Tax Code as occupation taxes);

*cf. id.* § 154.601(a) (stating that cigarette tax is not occupation tax). By labeling the sexual-oriented-

business tax as a fee, the plain language of the statute indicates that the legislature did not consider

this provision to be an occupation tax, and therefore was not intended to be a tax on the privilege of

operating this kind of business.[6]

We conclude that the sexually-oriented-business tax is a general excise tax rather

than an occupation tax. Having concluded that the tax is not an occupation tax, we reverse the trial

court's conclusion that the Comptroller has the authority to direct 25% of the revenue from the

sexually-oriented-business tax to public schooling. We sustain the Comptroller's first issue on

cross-appeal. Because we have determined that the relevant statute is not an occupation tax, we

---

[6] Similarly, the legislature knows how to require that 25% of an occupation tax's revenue flow to public schools. *See, e.g.*, Tex. Tax Code §§ 181.202 (requiring 25% of cement-producer tax's revenue to go to "foundation school fund"), 191.121 (requiring 25% of miscellaneous occupation taxes' revenues to go to school funding). The fact that the legislature did not specify that 25% of the sexually-oriented-business tax's revenue should go to public schools is further indication that the legislature did not consider this tax to be a tax on the privilege of doing business in Texas. *Compare id.*, *with* Tex. Bus. & Com. Code §§ 102.054–.055 (allocating sexually-oriented-business tax's revenue to other specified programs).

need not address the TEA's argument that the trial court erred in concluding that article 7, section 3 of the Texas Constitution is "self-executing." We overrule the TEA's first issue on appeal.

**Equal and uniform taxation**

In its second appellate issue, the TEA asserts that the sexually-oriented-business tax violates article 8, section 1 of the Texas Constitution, which requires equal and uniform taxation.[7] Specifically, the TEA asserts that the statute unreasonably applies to businesses that provide nude entertainment to an audience of two or more, but does not apply to businesses that provide nude entertainment to an audience of one. *See* Tex. Bus. & Com. Code § 102.051(2)(A). Thus, according to TEA, businesses such as "lingerie modeling studios, nude modeling studios, or adult arcades" are not required to pay the sexually-oriented-business tax, rendering the tax unconstitutional.

"The mandate that all taxes be equal and uniform requires only that all persons falling within the same class be taxed alike." *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 609 (Tex. App—Austin 2000, pet. denied). "The requirements for equal protection under the United States Constitution and equal and uniform taxation under the Texas Constitution are substantially the same." *Id.* "We will uphold a tax classification unless it has no rational basis. . . . In reviewing taxation laws, we indulge a strong presumption of constitutional validity." *Id.* The state generally has "broad powers to impose and collect taxes, but [it] may not make classifications among taxpayers that are arbitrary, unreasonable, or capricious." *Id.* Thus, the classifications within the

---

[7] The TEA also asserts that the sexually-oriented-business tax violates article 8, section 2 of the Texas Constitution because it is not an equal and uniform occupation tax. Having concluded that the sexually-oriented-business tax is not an occupation tax, we need not reach this issue.

13

sexually-oriented-business tax must reasonably relate to the adverse secondary effects that the tax is intended to address. *See In re Nestle USA*, 387 S.W.3d at 621–22.

The TEA has not met its burden to overcome the presumption of constitutional validity by showing the statute's classifications have no rational basis. As noted by the supreme court, the sexually-oriented-business tax was imposed to address the adverse secondary effects of combining nude entertainment with alcohol consumption, both by discouraging the activity through higher taxation and by generating revenue for programs designed to address the social harms that result. *See Texas Entm't Ass'n*, 347 S.W.3d at 287–88. Consistent with this purpose, the legislature could have reasonably believed that to the extent there are commercial businesses offering nude entertainment to an audience of one—such as the lingerie studios and adult arcades listed in the TEA's brief—the nature of those businesses do not produce the same adverse secondary effects as nude-entertainment businesses allowing alcohol consumption with larger audiences. *See Bullock v. Texas Skating Ass'n*, 583 S.W.2d 888, 893–94 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.) (concluding reasonable to impose lower tax on skating rinks than ballrooms because skating rinks primarily used by children and families as opposed to adults).

We conclude that the sexually-oriented-business tax's classification is not unreasonable because limiting the tax's applicability to businesses with audiences of two or more reasonably relates to adverse secondary effects that the tax is intended to address. Thus, the tax does not violate the Equal and Uniform Clause of the Texas Constitution. *See* Tex. Const. art. VIII, § 1(a). We overrule the TEA's second issue on appeal.

**Prior restraint**

In its third appellate issue, the TEA argues that the sexually-oriented-business tax violates the Free Speech Clause of the Texas Constitution. *See* Tex. Const. art. I, § 8. Specifically, the TEA argues that the tax is a prior restraint on free speech, which the TEA claims is presumed to violate the Texas Constitution, citing to *Davenport v. Garcia*, 834 S.W.2d 4, 8 (Tex. 1992). Therefore, the TEA argues that even if the sexually-oriented-business tax does not violate the First Amendment of the United States Constitution, it nevertheless violates the Texas Constitution.

A party's burden to establish that the Texas Constitution affords greater free-speech protection than the First Amendment is thoroughly discussed in *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434 (Tex. 1998). In that case, the supreme court stated:

> This Court has recognized that "in some aspects our free speech provision is broader than the First Amendment." [quoting *Davenport,* 834 S.W.2d at 8]. However, to assume automatically "that the state constitutional provision *must* be more protective than its federal counterpart illegitimizes any effort to determine state constitutional standards." [quoting *Operation Rescue-Nat'l v. Planned Parenthood of Houston, Inc.*, 975 S.W.2d 546, 559 (Tex. 1998)]. If the Texas Constitution is more protective of a particular type of speech, "it must be because of the text, history, and purpose of the provision." [quoting *Operation Rescue-Nat'l*, 975 S.W.2d at 559].

*Id.* "The mere assertion that the state provision is broader than the federal *means nothing*," and a party claiming that the Texas Constitution offers greater free-speech protection must explain how the text, history, or purpose of the state constitution supports that argument. *Bentley v. Burton*, 94 S.W.3d 561, 578 (Tex. 2002).

In this case, the TEA makes no attempt to explain why the Texas Constitution offers greater protection than the First Amendment of the United States Constitution for free speech

15

associated with nude entertainment. Rather, the TEA merely asserts that article 1, section 8 of the Texas Constitution generally offers broader protection than its federal counterpart and notes that prior restraint on free speech is presumptively invalid under the Texas Constitution. These bare assertions fail to show how the text, history, or purpose of the Texas Constitution offers greater protection for this type of speech. *See id.*; *Benton*, 980 S.W.2d at 434. Therefore, the TEA has not provided us with any basis to conclude that the Texas Constitution offers greater protection than its federal counterpart. Given that the supreme court has already concluded that the sexually-oriented-business tax does not violate the First Amendment of the United States Constitution, we likewise conclude that it does not violate the Free Speech Clause of the Texas Constitution. *See* Tex. Const. art. I, § 8; *Texas Entm't Ass'n*, 347 S.W.3d at 288. We overrule TEA's third and final appellate issue.

## CONCLUSION

Having sustained the Comptroller's first issue on cross-appeal and overruled all other appellate issues, we reverse the trial court's judgment in part and render judgment that the sexually-oriented-business tax is not an occupation tax and thus there is no requirement that 25% of its revenue go to public schooling. The judgment of the trial court is affirmed in all other respects.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed in Part, Reversed and Rendered in Part

Filed: May 9, 2014

16