

# NUMBER 13-21-00010-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SWIFT TRANSPORTATION
CO. OF ARIZONA, LLC,                                        Appellant,

v.

GLENN HEGAR, COMPTROLLER
OF PUBLIC ACCOUNTS OF THE
STATE OF TEXAS; AND KEN
PAXTON, ATTORNEY GENERAL
OF THE STATE OF TEXAS,                                     Appellees.

## On appeal from the 200th District Court
of Travis County, Texas.

# MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Silva
### Memorandum Opinion by Justice Silva

Appellant Swift Transportation Co. of Arizona, LLC (Swift) appeals the trial court's

order granting summary judgment in favor of appellees Glenn Hegar, Comptroller of

Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas, (collectively, the State). In this suit, Swift seeks to obtain a refund of the franchise tax paid for tax years 2014 through 2016, arguing that an exemption from occupation taxes for transportation businesses includes an exemption from franchise tax. *See* TEX. TRANSP. CODE ANN. § 20.001. By two issues, Swift argues the trial court erred by granting summary judgment because: (1) "occupation tax and franchise tax have the same plain meaning"; and (2) "the franchise tax is measured by gross receipts." We affirm.

## I.     BACKGROUND[1]

Swift is a nationwide freight transportation company that does business in Texas. In May 2018, Swift initiated administrative proceedings with the Comptroller, seeking a refund claim for franchise tax paid for reporting years 2014 through 2016.[2] *See* TEX. TAX CODE ANN. § 111.064. The Comptroller denied Swift's request, prompting Swift to seek a hearing before the State Office of Administrative Hearings. The presiding administrative law judge issued a proposal for decision, denying Swift's request. The Comptroller accepted the proposal for decision with minor changes. Swift filed a motion for rehearing, which was denied.

Swift then filed a petition in the district court. Each party filed traditional motions for summary judgment. Swift sought a partial summary judgment declaring "that the Texas franchise tax is an occupation tax measured by gross receipts," thus exempting

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Austin Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.

[2] Swift sought a return of $979,742 plus interest.

2

Swift and other motor carriers from the franchise tax. *See* TEX. TRANSP. CODE ANN. § 20.001. The State requested the trial court to conclude the opposite, which would defeat Swift's claim altogether.

The trial court granted the State's motion for summary judgment and denied Swift's motion, disposing of all parties and claims. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Swift takes the position that Texas Transportation Code § 20.001's occupation tax exemption creates a franchise tax exemption. *See id.* § 20.001 ("A motor bus carrier or motor carrier transporting persons or property for hire is exempt from any occupation tax measured by gross receipts imposed by any law of this state."). Thus, the disposition of this case hinges on whether the franchise tax is an occupation tax measured by gross receipts.

Summary judgment is reviewed de novo. *Berry v. Berry*, 646 S.W.3d 516, 523 (Tex. 2022). "When both parties move for summary judgment and the trial court grants one motion and denies the other, . . . we review both sides' summary judgment evidence and render the judgment the trial court should have rendered." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022) (quoting *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013)).

Whether a tax is an occupation tax is a matter of statutory interpretation. *See Tex. Ent. Ass'n, Inc. v. Combs*, 431 S.W.3d 790, 797 (Tex. App.—Austin 2014, pet. denied). "In construing a statute, our objective is to determine and give effect to the Legislature's intent." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). We seek to determine and give effect

3

to the legislature's intent by considering the "act as a whole[,] rather than from isolated portions." *Id.* We utilize the enacted language of the statute, which includes any enacted statements of policy or purpose. *Id.* If we cannot determine the legislature's intent from the plain and ordinary meaning, we "then consider the term's usage in other statutes, court decisions, and similar authorities." *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 749 (Tex. 2020) (quoting *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)). "We turn to extrinsic sources only if the statute is ambiguous or if applying the statute's plain meaning would produce an absurd result." *EBS Sols.*, 601 S.W.3d at 749.

When, as here, we are evaluating the scope of a tax exemption, "we consider the types of taxation that could have been contemplated by the legislature when it granted the exemption." *United Servs. Auto. Ass'n v. Strayhorn*, 124 S.W.3d 722, 728 (Tex. App.—Austin 2003, pet. denied). Moreover, because tax exemptions "are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals," we strictly construe tax exemptions against the taxpayer. *Id.*; *see AHF-Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.*, 410 S.W.3d 831, 837 n.30 (Tex. 2012). The burden is on the claimant to prove that its claim comes within the statutory exemption it seeks to apply. *AHF-Arbors at Huntsville I, LLC*, 410 S.W.3d at 837 n.30 (citing *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex. 1979)).

### III.    ANALYSIS

We disagree with Swift's contention that the plain and ordinary meaning of § 20.001 includes an exemption for franchise tax. *See Youngkin*, 546 S.W.3d at 680; *see also* TEX. TRANSP. CODE ANN. § 20.001. Accordingly, we must look to the usage of

4

"occupation tax" and "franchise tax" in other statutes, court authorities, and similar authorities. *See EBS Sols., Inc.*, 601 S.W.3d at 749.

Texas franchise and occupation taxes date back as early as 1880. *See United Servs. Auto. Ass'n*, 124 S.W.3d at 725. When the Texas legislature passed § 20.001 in its original form, both franchise and occupation taxes existed and were in effect.[3] *See id.* at 728 ("When considering the scope of a tax exemption, we consider the types of taxation that could have been contemplated by the legislature when it granted the exemption."). Further, in 1985, the legislature amended a statute by removing an exemption for corporate "transportation companies" from franchise tax. *See* Acts of Apr. 3, 1985, 69th Leg., R.S., ch. 30, §1, 1985 Tex. Gen Laws 405. Prior to the amendment, the statute read: "A corporation that is an insurance company; surety, guaranty, or fidelity company; transportation company; or sleeping, palace car, and dining company now required to pay an annual tax measured by their gross receipts is exempted from the franchise tax." *Id.* The then-amended version thereafter read: "A corporation that is an insurance company; surety, guaranty, or fidelity company not required to pay an annual tax measured by their gross receipts is exempted from the franchise tax." *Id.* The statute has since been amended several more times. Indeed, the statute now contemplates a distinction between occupation and franchise taxes: "A nonadmitted insurance organization that is subject to an occupation tax or any other tax that is imposed for the privilege of doing business in another state or a foreign jurisdiction, including a tax on gross premium receipts, is

---

[3] Section 20.001 was originally passed in 1987 and subsequently recodified under the Texas Tax Code in 1995. *See* Acts of May 28, 1987, 70th Leg., R.S., ch. 232, § 2, 1987 Tex. Sess. Law Serv. 232 (recodified as Tex. Transp. Code Ann. § 20.001, Acts of May 21, 1997, 75th Leg., R.S., ch. 165, § 30.02, sec. 20.01, 1997 Tex. Sess. Law Serv. Ch. 165 (S.B. 898)).

5

exempted from the franchise tax." TEX. TAX CODE ANN. § 171.052(a). Further, each tax applies to a business based on different classifications. *See Tex. Ent. Ass'n, Inc.*, 431 S.W.3d at 798 (noting that the sexually-oriented-business tax was not a classification based on the privilege of operating nude entertainment business in Texas, but rather to offering nude entertainment while allowing alcohol consumption).

Although both taxes were in existence at the time the legislature passed § 20.001, the legislature limited the express language to "any occupation tax," and we presume this legislative action was purposeful. *See* TEX. TRANSP. CODE ANN. § 20.001; *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012) ("[T]his Court presumes the Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact."); *see also United Servs. Auto. Ass'n*, 124 S.W.3d at 728. We additionally note that when the legislature has historically intended for a tax to be an occupation tax, it has identified the tax as such. *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018) ("[T]he Legislature expresses its intent by the words it enacts and declares to be the law." (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011))); *see, e.g.*, TEX. TAX. CODE ANN. §§ 181.201 (classifying taxes on the manufacture, distribution, and sale of cement products as an "occupation tax"), 191.121 (classifying taxes on oil well services as an "occupation tax"), 201.401 (classifying a tax on natural gas production as an "occupation tax"), 202.351 (classifying taxes on oil production as an "occupation tax").

To support its argument that the Texas franchise tax is an occupation tax, Swift primarily relies on two sources: (1) *United Services Auto Association v. Strayhorn*, wherein the Third Court of Appeals described the franchise tax as "a type of occupation

tax," *see United Servs. Auto. Ass'n*, 124 S.W.3d at 725 n.4; and (2) the Texas Supreme Court's assertion in *In re Nestle USA, Inc.* that there exist similarities between franchise and occupation taxes. *See In re Nestle USA, Inc.*, 387 S.W.3d 610, 619–21 (Tex. 2012) (orig. proceeding); *see also Bullock*, 584 S.W.2d at 270 ("[A] franchise tax is imposed upon all domestic and foreign corporations doing business in Texas."); *Conlen Grain & Mercantile, Inc. v. Tex. Grain Sorghum Producers Bd.*, 519 S.W.2d 620, 624 (Tex. 1975) ("An occupation tax is a form of excise tax imposed upon a person for the privilege of carrying on a business, trade or occupation.").

The *United Services Auto Association* court considered whether a tax exemption for insurance companies exempted them from paying sales and use taxes. *United Servs. Auto. Ass'n*, 124 S.W.3d at 727. In doing so, the court reviewed the history of taxation in Texas from the late 1800s through the enactment of the statute in question—an insurance code provision—in 1994. *Id.* at 724–27. The court noted that the legislature replaced occupation taxes on insurance companies with a gross premium tax in 1893, and in a footnote, the court described the franchise tax as "a type of occupation tax." *Id.* at 725–26, n.4. However, whether the franchise tax is an occupation tax—as asserted by Swift— was not at issue in *United Services Auto Association*, nor was it necessary to the outcome. *See id.* at 730–31. Consequently, the court's footnote constitutes obiter dictum. *See Lund v. Giauque*, 416 S.W.3d 122, 129 (Tex. App.—Fort Worth 2013, no pet.) ("Obiter dictum is a statement not necessary to the determination of the case and that is neither binding nor precedential."); *contra Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 399 (Tex. 2016) ("Judicial dictum is 'a statement made deliberately after careful consideration and for future guidance in the conduct of litigation.'" (quoting *Lund*, 416

S.W.3d at 129)). As such, we are not bound by the Third Court of Appeal's footnote statement. *See Seger*, 503 S.W.3d at 399 ("Obiter dictum is not binding as precedent.").

We additionally find Swift's reliance on *In re Nestle* to be misplaced. In *In re Nestle*, the Texas Supreme Court considered Nestle's challenge to the Texas franchise tax as violative of the Texas Constitution's Equal and Uniform Clause.[4] *In re Nestle USA, Inc.*, 387 S.W.3d at 616. Nestle argued that the franchise tax was unconstitutional based on its many deductions and exemptions. *Id.* In its consideration of Nestle's claim, the court compared constitutionally permissible classifications of various occupations, which led to varying tax rates for different industries. *Id.* at 621. The court noted that "Black's Law Dictionary defines each the same way: a 'tax imposed [for or on] the privilege of carrying on a business[.]'" *Id.* at 621 n.99 (comparing BLACK'S LAW DICTIONARY 1595 (9th ed. 2009) (franchise tax definition) with BLACK'S LAW DICTIONARY 1596 (9th ed. 2009) (occupation tax definition)). However, as with the footnote in *United Services Auto Association*, the comparison in *In re Nestle* exists as obiter dictum. *See Seger*, 503 S.W.3d at 399. The central question in *Nestle* considered whether the franchise tax's classifications, deductions, and exemptions violated the Texas Constitution's Equal and Uniform Clause—not whether the franchise tax constitutes an occupation tax. *See In re Nestle USA, Inc.*, 387 S.W.3d at 621. Further, while the court noted the similarities between the two, it did not go so far as to say the two taxes are the same. *See id.* In fact, the court noted a significant distinction between the two: the franchise tax is imposed in exchange for the privilege of the business operating as an entity that provides a liability shield

---

[4] The Equal and Uniform Clause states that "[t]axation shall be equal and uniform." TEX. CONST. amend. VIII, § 1(a).

8

whereas the occupation tax is imposed for privilege of doing business in a certain occupation. *Compare id.* at 622, *with Tex. Ent. Ass'n, Inc.*, 431 S.W.3d at 798. Accordingly, we conclude *In re Nestle* does not create the precedent that Swift contends it does.

Moreover, as the Texas Supreme Court noted in *In re Nestle*, the Equal and Uniform Clause permits differing classifications for assessing taxes. 387 S.W.3d at 622. The franchise tax and occupation tax each classify the businesses subject to their taxes differently. For example, whether a business is subject to the franchise tax depends on which entity the business chooses. *See* TEX. TAX. CODE ANN. §§ 171.0002 (defining "taxable entity" for franchise taxes), 171.001 (imposing the franchise tax on each "taxable entity" that does business in this state). On the other hand, occupation taxes are classified by occupation and industry, regardless of the entity chosen. *See, e.g.*, *id.* §§ 181.001– 181.202 (imposing occupation tax on the manufacture, distribution, and sale of cement products), 191.081–191.122 (imposing occupation tax on oil well services), 201.001– 201.404 (imposing occupation tax on natural gas production), 202.001–202.354 (imposing occupation tax on oil production); *see also Occupation*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/occupation (last visited Oct. 24, 2022) (defining occupation as "an activity in which one engages" or "the principal business of one's life").

We decline to ascribe the precedential weight as propounded by Swift to the authorities discussed *supra*. The legislature's repeal of an exemption from franchise taxes for corporate transportation companies demonstrates a discernible legislative intent to exclude an exemption of transportation companies from franchise taxes. *See* Acts of Apr.

3, 1985, 69th Leg., R.S., ch. 30, § 1, 1985 Tex. Gen Laws 405 (to be codified as an amendment to TEX. TAX CODE ANN. § 171.052); *see also Youngkin*, 546 S.W.3d at 680. Finally, the current version § 171.052(a) shows a clear intent by the legislature to differentiate between franchise and occupation taxes. *See* TEX. TAX. CODE ANN. § 171.052(a); *EBS Sols., Inc.*, 601 S.W.3d at 749. We conclude that Texas Transportation Code § 20.001's exemption from the occupation tax does not include an exemption from the franchise tax. Swift's first issue is overruled.

Because we conclude the franchise tax is not an occupation tax, we do not need to consider whether the franchise tax is measured by gross receipts. *See* TEX. R. APP. P. 47.4.

## IV.  CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
10th day of November, 2022.

10